# CHARLESTON.

WILLIAMSONS *et al. v.* COUNTY COURT.
HURST *et al. v.* SAME.
STAFFORD *et al. v.* SAME.

Submitted October 11, 1904—Decided October 18, 1904.

1.  PROHIBITION—*Notice.*
    The rule in prohibition is a necessary preliminary notice, but is not a writ within the meaning of section 7 of article 3 of the Constitution, and need not run in the name of the State of West Virginia. (p. 41).

2.  ELECTION PRECINCTS.
    Where the county court has established election precincts and voting places therein, and has adjourned, its action in reference to that duty is performed. Prohibition will not then lie to interfere with such action. The establishment of election precincts and voting places is in no sense judicial, and cannot be controlled by prohibition. (p. 42).

3.  ELECTION COMMISSIONERS—*Prohibition.*
    The appointment by the county court of election commissioners for election precincts under section 7 of chapter 3 of the Code is an administrative, or ministerial act, and cannot be interfered with by writ of prohibition. (p. 42).

Application by J. B. Williamson and others, Hi Williamson and others, W. A. Hurst and others, and John L. Stafford and others for writs of prohibition to the County Court.

*Writ Denied.*

VINSON & THOMPSON and C. H. JONES, for petitioners.

JOHN A. SHEPPARD, and BROWN, JACKSON & KNIGHT, for respondent.

MILLER, JUDGE:

On the 19th day of September, 1904, B. Randolph Bias, Alex Stafford, J. E. Toler and S. A. Ferrell, qualified voters of the county of Mingo, presented to the circuit court of that county their petition, duly verified, praying that an alternative writ of *mandamus* be awarded to them, directed to the county court of said county, commanding it to establish certain voting precincts

and convenient voting places therein at the several points mentioned in their petition or show cause, if any it could, why it should not do so. The prayer of the petition was granted, and a *mandamus nisi* was issued and served.

On the 22d day of the same month, the circuit court made and entered an order, awarding the peremptory writ of *mandamus,* "directed to the said county court of Mingo county, commanding it to divide, by proper order, Precinct No. 2, in Stafford District, into two precincts, one of which shall include the Mitchell Hatfield school house, and the other the town of War Eagle, and to establish one voting place within each of said precincts; also to divide Precinct No. 2, in Lee District of said county, into three voting precincts, by establishing two additional voting precincts therein, one of the said precincts to be cut off of the upper part of Precinct No. 2, so as to include the town of Merrimac, and to establish within said precinct a place of voting therein most convenient for the voters of said precinct; the other of said additional precincts to be cut off of the lower part of Precinct No. 2, so as to include the town of Nolan and Buffalo Creek, and to establish a voting place the most convenient to the voters therein; also to divide Hardee District, which contains but one, into two precincts; and lay off and establish within said district two voting precincts, one of which shall be on Pigeon Creek and its waters, so as to include the Dempsey school house, and the other on Tug River and branches, so as to include the town of Naugatuck; and to establish a voting place within each of said precincts most convenient for the voters residing therein. That in the establishment of said several voting precincts, each shall include, as nearly as practicable, two hundred electors, and not to exceed two hundred and fifty electors." It was further considered by the court that service of a copy of this order upon the said defendant should be a sufficient service of the peremptory *mandamus* upon it.

Thereupon the county court convened in special session at the Court House on the 24th day of September, 1904, and, in obedience to said *mandamus,* made and entered an order that Precinct No. 2 in Stafford District, being Wharncliff Precinct, be divided into two voting precincts; that Williamson Precinct be divided into three voting precincts; and that Hardee District be divided into two precincts.

The several voting precincts thus established were num-

bered; the boundaries thereof defined; and places of holding elections therein designated. It was further ordered that notice of the establishment of the above mentioned voting places should be published and posted as required by the statute; and that the clerk of the county court should provide the necessary booths and supplies for the voting places so established. The county court, having completed the work of its special session as aforesaid, and the president thereof having signed the record of its proceedings, it then, to-wit: on the 24th day of September, 1904, adjourned.

On the 26th day of September, 1904, J. B. Williamson and others, residents and qualified voters of Hardee District; Hi Williamson and others, residents and qualified voters of Lee District; and W. A. Hurst and others, residents and qualified voters of Stafford District, in the county aforesaid, presented their three several and respective petitions to one of the Judges of this Court, praying that writs of prohibition be awarded to them on said petitions respectively against the county court of Mingo county, prohibiting said court from dividing said districts into the election precincts as hereinbefore stated, and from taking any action toward altering, interfering with, or changing the election precincts in said districts as then established. Whereupon a rule in prohibition was awarded upon each of said petitions, returnable before this Court on the 11th day of October, 1904. On the 29th day of September, 1904, an additional petition was presented to the same Judge by Jno. L. Stafford and others, residents and qualified voters in the county of Mingo, alleging, among other things, that they have been nominated, and are candidates for county offices in said county, and as such candidates are to be voted for at the general election to be held therein on the 8th day of November, 1904, reciting the proceedings leading up to, and the establishment of, said voting places as aforesaid, charging that all of the proceedings, resulting in the establishment of said voting places, were and are illegal and void; that the circuit court of Mingo county had no jurisdiction or power to entertain the *mandamus* proceedings aforesaid, or to issue the said peremptory writ of *mandamus;* that section 6 of chapter 3 of the Code provides, among other things, that no consolidation, division, change or alteration shall be made in any election precinct within ninety days preceding an election, and praying that a writ of prohibition

be awarded to them against the said county court to prohibit it from appointing commissioners of election, clerks. or any other election officers to conduct the election to be held on the 8th day of November, 1904, at the said election precincts established by the said county court on the 24th day of September, 1904, as aforesaid. A rule was also issued upon this petition against the county court, returnable on the 11th day of October, 1904.

On the return day of the rules, the county court appeared by counsel, moved this Court to quash the said rules, and each of them, because they do not, nor does either of them, run in the name of the State of West Virginia; and the defendant also made and filed returns to each of the rules aforesaid. Section 7 of Article 3 of the Constitution does provide that writs issued under the authority of this State shall run in the name of the State of West Virginia. But we hold that "the rule is only the necessary preliminary notice," to inform the defendant that the writ of prohibition has been applied for, is not a writ within the meaning of the Constitution, and need not run in the name of the State. Therefore, we refuse to quash the rules for that reason.

In our view of the case, it is not necessary to decide whether section 6 of chapter 3 of the Code is directory or mandatory, or to pass upon the validity or invalidity of the *mandamus* proceedings in the circuit court, because it is plainly evident from the record before us that the action of the county court in establishing the voting precincts, and places of voting therein, was completed on the 24th day of September, 1904, two days before the writs of prohibition were applied for, and because such action is in no sense judicial.

Prohibition is a restraining, not a corrective, remedy. It "issues only to prevent the commission of a future act, and not to undo an act already performed." High Extra. Legal Rem. (3d Ed.) section 766. "Prohibition lies only to prevent the doing so of an act, and can never be used as a remedy for acts already done." *Haldeman* v. *Davis,* 28 W. Va. 326, and cases there cited. "It is a preventive writ, and cannot issue after the act complained of has been done." Works on Courts and their Jurisdiction, section 81; *King* v. *Doolittle,* 51 W. Va. 91; Spelling on Inj. and Extra. Legal Rem. Vol. 2, section 1720. The above cited authorities dispose of the cases before us so

far as they relate to the establishment of the voting precincts and voting places therein.

Section 7 of chapter 3 of the Code provides that "the county court of every county shall hold a regular or special session at the court house of their county, on the first Tuesday of the month next preceding the month in which any election is to be held, and shall appoint three qualified voters as commissioners of election for each precinct of their county." This appointment is a distinct and independent act, in no sense a part of the preceding action of the county court, by which the voting precincts and voting places therein are established. If it be apparent to the county court that voting places have been established within its county, it is its duty to appoint commissioners of election therefor. The discharge of this duty requires no judicial or *quasi* judicial inquiry or determination. The act is purely administrative or ministerial. In *Fleming* v. *Commissioners,* 31 W. Va. 609, it is held that "prohibition lies only in case of the unlawful exercise of judicial functions. Acts of a mere ministerial, administrative or executive character, do not fall within its province." "And while the writ will lie in proper cases as to matters of a purely judicial nature, it will not go if the proceedings, which it is sought to prevent, are only ministerial." High Extra. Legal Rem. (3d Ed.) section 769. In *Hassinger* v. *Holt, Judge,* 47 W. Va. 348, it is held that "A writ of prohibition only goes against a judicial tribunal, and judicial action, and not that which is merely ministerial." Spelling on Inj. & Extra. Legal Rem. (2d Vol.) section 1744. In *Brazie* v. *Commissioners,* 25 W. Va. 213, it is held that "the writ of prohibition lies from a superior court, not only to inferior judicial tribunals, but to inferior ministerial tribunals, possessng incidentally judicial powers, and known as *quasi* judicial tribunals, and also in extreme cases to purely ministerial bodies, *when they usurp and attempt to exercise judicial functions.*" In that case the commissioners of the county court of Fayette county, sitting for the purpose of canvassing and ascertaining the vote cast in that county at the general election held therein on the 14th day of October, 1884, for State and county officers, proceeded to examine witnesses and hear evidence to prove that divers persons at Wyant's and other voting places, not entitled to vote, had cast ballots for certain candidates, in

order to exclude the alleged illegal votes in determining the result of the election. This, the commissioners had no legal right to do, as it was a usurpation, and use of judicial power, not belonging to them, in such case. But that case is not applicable here.

For the reasons stated, the said rules, and each of them, are dismissed and the writs prayed for are refused.

*Writ Denied.*