# CHARLESTON

McWHORTER *v.* DORR *et al.*

Submitted April 12, 1905.     Decided April 25, 1905.

1. PROHIBITION—*Special Tribunal—Election Contest.*

    The writ of prohibition does not lie from this Court to prevent a
    member of a special tribunal constituted under the authority of
    section 15, of chapter 6, of the Code, from acting in the hearing and
    determination of an election contest before such tribunal, upon
    petition filed by a party to such contest, recusing such member.
    (p. 610.)

2. SPECIAL TRIBUNAL—*Legislative Character.*

    A special tribunal constituted under authority of section 15, of
    chapter 6, of the Code, is a subordinate legislative tribunal and not
    a part of the judicial department of the State.  (p. 613.)

Petition by J. C. McWhorter for a writ of prohibition to
C. P. Dorr, judge, and J. B. Morrison.

*Refused.*

W. W. BRANNON, W. G. BENNETT, and L. H. KELLY, for
petitioner.

ALEX. DULIN, for respondents.

COX, JUDGE:

This is a petition in prohibition by J. C. McWhorter,
recusing C. P. Dorr, a member of a special tribunal consti-
tuted by authority of section 15, of chapter 6, of the Code,
to hear and determine a contest as to the election of a Judge
of the Twelfth Judicial Circuit of West Virginia, (which
election was held on the 8th day of November, 1904), and
praying for a writ of prohibition against Dorr, preventing
him from acting as a member of such tribunal.  The peti-
tion alleges in effect that J. C. McWhorter and J. B. Mor-
rison were opposing candidates for judge of said circuit at
said election; that McWhorter received a majority of the
votes cast in said circuit; that within the time prescribed by law
Morrison gave notice of contest; that within the time pre-
scribed by law McWhorter gave a return notice; that Morri-
son filed before the Governor a petition; that a special tri-
bunal under section 15 of chapter 6 of the Code, was consti-
tuted by the selection of Hon. C. P. Dorr by Morrison, Hon.

C. W. Dailey by McWhorter, and Hon. T. P. Jacobs by the Governor; that the time and place of meeting were appointed; that said tribunal has not acted in the hearing and determination of such contest; that petitioner appeared before said tribunal and objected to Dorr acting as a member thereof upon the ground that Dorr was attorney for Morrison in said contest, and that he had been attorney and counsel for Morrison in the preparation of the notice of contest; and on the ground that Dorr was a partisan of Morrison; and that Dorr as a member of such tribunal, would be obliged to pass upon evidence involving his actions and relations with Morrison preceding and subsequent to said election, and upon other grounds fully set out in the petition, all of which grounds are relied on here.

This Court has original jurisdiction in cases of prohibition. The writ goes against a judicial tribunal and against judicial action. *N. & W. Railway Co.* v. *The Pinnacle Coal Co.*, 44 W. Va. 574. The writ lies to restrain a judge of a court from proceeding in a cause in which he is disqualified by reason of interest. *Forest Coal Co.* v. *Doolittle, Judge, et al*, 54 W. Va. 210.

The first question presented is, whether or not a special tribunal constituted under section 15 of chapter 6 of the Code, is a court, and part of the judicial department of the State. If it is not, prohibition does not lie. It is contended by petitioner that such special tribunal is an inferior judicial tribunal within the meaning of section 1 of art. 8 of the Constitution, which provides that: "The judicial power of the State shall be vested in a Supreme Court of Appeals, in circuit courts and the Judges thereof, in such inferior tribunals as are herein authorized and in Justices of the peace."

Section 11 of article 4 of the Constitution provides: "The Legislature shall prescribe the manner of conducting and making returns of elections and of determining contested elections; and shall pass such laws as may be necessary and proper to prevent intimidation, disorder or violence at the polls, and corruption or fraud in voting, counting the votes, ascertaining or declaring the result, or fraud in any manner upon the ballot."

Under this section, the Legislature has power to confer upon the courts, or upon *quasi judicial* tribunals, or upon

inferior legislative tribunals, or may itself retain jurisdiction to hear and determine election contests. Where jurisdiction to hear and determine election contests has been conferred upon the courts or other permanent tribunals of the State, all rights of appeal from or review of the action of such courts or permanent tribunals, existing at common law or conferred by statute as to other matters determined by such courts or permanent tribunals, follow and apply to election contests determined by them. Such is the force and effect of our decisions. See *Cunningham* v. *Squires*, 2 W. Va. 422, allowing *certiorari* from the decision of the board of supervisors under the old Constitution; the cases of *Dryden* v. *Swinburn*, 15 W. Va. 234, and *Swinburn* v. *Smith, Judge, etc.*, 15 W. Va. 483, allowing *certiorari* from the decision of the county court under the new Constitution; and *State ex rel Thompson et al*, v. *McCallister, Mayor*, 38 W. Va. 485, allowing *certiorari* from action of a municipal council under section 2 of chapter 110 of the Code.

Where the jurisdiction to hear and determine an election contest has been conferred upon the legislative branch of the Government, the courts have no power to review its action. *Goff* v. *Wilson*, 32 W. Va. 393. and cases there cited. Many others might be cited. These cases, however, aid us but little in determining the characrer and nature of the special tribunal authorized by section 15 of chapter 6 of the Code.

Mr. Paine in his work on elections, section 793, says: "In the absence of Constitutional inhibitions, the Legislature has power to declare the certificate of election conclusive, in all cases. It may or may not authorize a contest. If a contest be authorized, the mode of contest and of trial will rest absolutely in the legislative discretion. The Legislature has full power to determine what tribunal shall hear and determine the contest, and may confer the jurisdiction upon one of the ordinary judicial tribunals or upon a judge thereof, or upon any other officer, and may or may not authorize a trial by jury."

There is abundant authority holding that primarily, elections belong to the political branch of the Government and are beyond the control of the judicial power, except when authorized by Constitution or by statute. 15 Cyc. 394; *Cald-*

*well* v. *Barrett*, 73 Ga. 604; *Dickey* v. *Reed*, 78 Ill. 261; *Clarke* v. *Rogers*, 81 Ky. 43; *State* v. *Second Judicial Dist. Ct.*, 13 La. Ann. 89; *Williamson* v. *Lane*, 52 Texas. 335.

"In the absence of special statutory authority, the courts are without jurisdiction *retione materiae* to entertain cases of contested elections." 15 Cyc. 394, note 66, and *Const. Co.* v. *Police Jury*, 44 La. Ann. 863; *State* v. *Police Jury*, 41 La. Ann. 846; *State* v. *Judges Civil Dist. Ct.*, 40 La. Ann. 598; *Fowler* v. *Gable*, 3 Pa. Dist. 23.

"It has been held that where a specific mode of contesting elections has been provided by statute that mode alone can be resorted to; and that where a mode of contest has been provided in a city charter for contesting the election of city officers, before a statutory tribunal, it excludes any other remedy and takes from the courts all supervisory power over such contest." 15 Cyc. 395, and the many authorities cited in notes 74 and 75.

The language of section 15 of chapter 6 of the Code, authorizing the special tribunal in question, is as follows: "Where the election of treasurer, auditor, State Superintendent of free schools, attorney general, a judge of the Supreme Court of Appeals or a circuit court, is contested, the case shall be heard and decided by a special court constituted as follows: The person declared elected shall select one, the contestant another, and the Governor a third person, who shall preside in said court, and the three or any two of them shall meet at a time and place to be appointed by the Governor, and being first duly sworn impartially to decide according to law and the truth upon the petition, returns and evidence to be submitted to them, shall proceed to hear and determine the case and certify their decision thereon to the Governor. They shall be entitled to the same pay and mileage as members of the Legislature, to be paid out of the treasury of the State." Section 14 of the same chapter provides pursuant to section 3 of article 7 of the Constitution, that a contest as to the election of a Governor shall be determined by the Legislature, both houses sitting in joint session. By section 13 of the same chapter, it is provided both in relation to a contest as to the election of a Governor before the Legislature, and as to a contest as to the election of the other officers mentioned above before a special tribunal authorized by said section 15, as fol-

lows: "The depositions shall be transmitted to the Clerk of the House of Delegates, to be delivered by him to the joint committee or special court hereinafter provided for. In other respects the regulations contained in this chapter respecting contests for a seat in the Legislature, shall be observed so far as they are applicable."

The formation of the special tribunal under said section 15, is peculiar, and unusual in the formation of judicial tribunals. Such special tribunal is constittued for the sole purpose of hearing a single election contest. It has no other or further jurisdiction except to award costs and certify its decision to the Governor. The proceedings before such tribunal are strictly statutory, and in most respects the regulations applicable to a contest for a seat in the Legislature, apply to the proceedings before such special tribunal. The pay and mileage of the members of the tribunal are the same as the pay and mileage of members of the Legislature. No appeal from or review of the decision of this tribunal is provided for by statute. It must be presumed that the Legislature had these things in mind when it authorized such a tribunal. The fact that no appeal or review is provided for cannot be attributed to an oversight or inadvertence by the Legislature. It was competent for the Legislature under section 11 of article 4, of the Constitution, to provide a special tribunal, legislative in its character, to hear and determine contests as to the election of the officers named, wholly separate from the judicial power of the State and not reviewable by it—a special tribunal at once exclusive and conclusive. It seems clear to us that the special tribunal in question is such a tribunal. No doubt the Legislature was impelled to create such a tribunal upon important considerations affecting the public welfare. The officers named are treasurer, auditor, State superintendent of free schools, attorney general and judges of the Supreme and Circuit Courts. The public good requires that a contest for these offices shall be settled finally without delay. The necessity is urgent that contests as to who shall adjudicate the questions of life, liberty and property within the State, and as to who shall administer the affairs of the State, shall be determined at the earliest possible moment and shall not be the subject of tedious and protracted litigation in the courts. The right to hold the offices named, should not long

be in jeopardy. A contest as to the election of Governor is to be determined by the Legislature without review or appeal. It appears to us that the Legislature intended the same finality to follow the action of the special tribunal authorized by section 15 of chapter 6. The Legislature in order to relieve itself from the burden of hearing and determining contests as to the election of the officers mentioned in said section 15, and in order to relieve the people of the State from the great cost of maintaining a Legislature to hear and determine such contests, authorized by said section 15 a special and subordinate legislative tribunal to act in its stead and place.

It may be said that said section 15 calls this special tribunal a court, and that such tribunal exercises judicial functions and is therefore a part of the judicial power of the State. The reply is that it may be said with equal force that the Legislature in determining a contest for Governor, exercises judicial functions; and that a circuit court exercises judicial functions when it incorporates a city, town or village. Yet the circuit court when so acting, is held *In re Town of Union Mines*, 39 W. Va. 179, to be but a subordinate branch or tribunal of the Legislature, not of the judicial department, and as such not subject to the appellate jurisdiction of the Supreme Court of Appeals. JUDGE DENT in delivering the opinion ot the Court in that case, quotes with approval Ord. Const. Law 344: "Under the tripartite division of the powers of government, it becomes the duty of the Legislature to enact laws, of the judiciary to construe them and of the executive to enforce them," and further says: "While this is the basic principle underlying the separation of the government into its departments, it has been found to be wholly impracticable to make such separation perfect. On the contrary, it has been found necessary for its own existence and the proper discharge of its functions, that the Legislature should exercise both judicial and executive or administrative functions, such as are entirely distinct from a legislative or law-making function, strictly speaking. In the enaction of every law the Legislature is called upon to exercise judicial functions, and especially is this true in granting a charter to a city, town or village; for there must be an inquiry judicial in its nature, as to whether the facts

justify the enaction of the law." See also *Mackin* v. *County Ct.*, 38 W. Va. 338.

In the case of *Summers County* v. *Monroe County*, 43 W. Va. 207, it is held that the action of the circuit court in appointing commissioners to settle lines between counties, under the statute, is legislative, or administrative. On page 210 JUDGE BRANNON, delivering the opinion of the Court, says: "There is another reason why this Court has no jurisdiction, and that is that the action of the circuit court in this matter is legislative, or rather, administrative of a legislative power or function, not judicial action, because the formation of counties and the fixing and altering of their boundaries, is purely a legislative function. The Legislature can delegate that power to subordinate agencies." See also *Roby* v. *Shepperd*, 42 W. Va. 286.

Being of the opinion that the special tribunal authorized by section 15, chapter 6 of the Code, is a subordinate legislative tribunal, the writ of prohibition must be refused.

*Refused.*

## FINDING OF SPECIAL COURT.

### MORRISON v. McWHORTER.

1. A Special Court, constituted and convened under the provisions of chapter 6, Code 1899, has a limited jurisdiction. But such jurisdiction necessarily draws to it the right to hear and determine all questions touching the regularity and sufficiency of the pleadings in a contest for a judicial office, including the legal sufficiency of the notice of contest, as well as all other pleadings and notices.

2. A notice of contest for a judicial office is a pleading, or is in the nature of a pleading, and its purpose is not only to institute the proceeding of contest, and to bring the respondent or contestee into court, but also fully and plainly to inform him of the character and cause of the ground of contest.

3. Notice of contest, which, on its face, discloses no ground upon which an office may be contested for, is fatally defective.

4. The sufficiency of the pleadings in a contest for a judicial office, as a question of law, is for the consideration and determination of the court.

5. The sufficiency of the pleadings in such case, such as the notice, petition or other pleading, may be conveniently raised and brought on for adjudication, by motion to quash, by demurrer, or by mere objection, or suggestion. And where, in such case, the pleadings

do not disclose on their face, a ground of contest, it is the duty of the court, *sua sponte*, to notice fatal defects and abate the proceedings.

6. Before bribery in an election can be used as a basis of contest for a judicial office, or removal therefrom, the accused party must have been convicted of bribery at the election, upon an indictment by a grand jury, and a regular trial before a court and petit jury.

Opinion by JACOBS, PRESIDENT:

J. C. McWhorter and J. B. Morrison were rival candidates for the office of Judge of the Twelfth Judicial Circuit at the general election held on the 8th day of November, 1904.

On the canvass of the returns from the several counties of the Circuit, McWhorter was declared elected, was commissioned by the Governor, qualified and entered upon the discharge of his duties.

Within the period prescribed by law, Morrison served on McWhorter notice of contest, which he then filed with Governor White, and by the same document nominated C. P. Dorr, of Webster County, a member of the contest court.

McWhorter served a return or counter notice upon Morrison, and nominated C. W. Dailey, of Randolph County, as a member of said Court.

Governor White then appointed Thos. P. Jacobs, of Wetzel County, President of the Court; and by proclamation convened the Court for the purpose of hearing and determining said contest.

Voluminous evidence was taken in the form of depositions, and the controversy submitted to the Court. Upon the hearing the contestee objected to the sufficiency of the notice of contest by way of demurrer or motion to quash.

The contestant protested against any consideration of any form of objections to the sufficiency of the notice, and insisted that the Court should decide the case upon the whole record, regardless of the character of the notice.

The contestee insisted that it was competent to question the sufficiency of the notice, and other pleadings in the case, in some manner, and if the same were not sufficient and did not make out and state a case on their face, they should be quashed and abated. In other words, the first duty of the Court was to determine whether the Court had a case before

it on the pleadings on which to act, and whether the pleadings, whatever their form, make out on their face, a case upon which the judgment of the Court can be properly invoked on the merits.

We think the notice of contest, the petition, or any other paper which serves to bring on the contest—the issue—whatever be its form or name, is a pleading, or in the nature of a pleading; that it serves, or is intended to serve, a vital and essential purpose, and that it is impossible to conduct a contest without some pleadings defining the issue and the scope of the inquiry.

The law provides for a notice and specification (Code ch. 6, sec. 13) and contemplates a petition (Code ch. 6, sec. 15).

The notice, specifications of contest and petition, if any, are intended to subserve a substantial purpose.

They are analogous to the declaration at law or the bill in equity. They serve a double purpose: First, to bring the contestee into Court; and second, to inform him of the grounds of contest. Without a sufficient notice of contest, there can be no contest.

Therefore, the conclusion is self evident, unless the notice of contest and specifications, on their face, state some legal ground of contest, there can be no contest—there can be no case in Court.

At the threshold this is a question for the judgment of the Court. If raised in any proper manner, it must be decided. Indeed, if no case is made on the pleadings, the Court, *sua sponte*, must so find and hold, even although neither party raises the question.

The pleadings are to guide the Court as well as the parties, and without some form of pleadings sufficiently setting forth on their face a *prima facie* case, the Court has no foundation on which to base its judgment on the merits. This is elementary.

As long as the sufficiency of the pleadings is a question for the Court, it is immaterial how the question is raised.

Such sufficiency may be conveniently raised in this case by a motion to quash, by demurrer, or by mere suggestion to the Court. The form is wholly immaterial.

We hold it competent, therefore, to demur, move to quash or make a mere suggestion, and we entertain the demurrer,

or motion to quash, and proceed to consider the sufficiency of the notice of contest, specifications, etc.

Are the notice of contest, specifications, etc.. sufficient under the law: do they present a case on their face?

This is the one question on the demurrer, or motion to quash.

We are not unmindful of the gravity and importance of the question, and the necessity of a correct decision. There is no appeal in case of error, and this circumstance has induced more than ordinary care and caution in an effort to reach a correct solution.

The case made out on the face of the notice of contest, is simply this:

There are twenty-one specifications of grounds of contest contained in the notice. It charges that the ground of contest is that the contestee, at the time of election, was not qualified to hold the office of Judge of the Twelfth Judicial Circuit. The twenty-one specifications profess to set forth the facts relied on to substantiate said grounds.

The first specification alleges an *offer* to pay money for a vote and influence: the second is to the same effect; the third alleges a payment or agreement to pay for vote and influence; the fourth to the same effect; the fifth and sixth offer to pay for vote and influence; the seventh alleges a payment of money for a vote and influence: the eighth, nineth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth and sixteenth specifications allege that *contestee*, or *his agents*, paid various sums of money to divers persons for their respective votes and for their influence to secure other votes; the seventeenth alleges the use of money with other and unknown voters in the Circuit; the eighteenth and nineteenth specifications allege payment by *contestee*, or *his agents*, for votes and to secure other votes; the twentieth alleges payment to commissioners and poll clerks, without naming them, in Upshur County, to secure the votes and influence; the twenty-first and the last alleges the use of Five Thousand Dollars by contestee's law partner for the purpose of securing the votes of citizens in the circuit. How used or when, where or with whom, is not said.

The notice then concludes a summation as follows: "That by the use of said money and means aforesaid, for the pur-

pose of corrupting and influencing the voters of said circuit at said election, you have disqualified yourself to hold said office."

The petition in more general terms alleges the use of money in said election.

The contest proceeds upon the theory of the bribery and corruption of the general electorate, without descending into particulars.

No attempt is made to challenge and reject any single vote with a view of changing the general result as certified by the canvassing boards, but the contest goes upon the theory that if contestee used money to procure votes of some and their influence to secure other votes, then the contestee disqualified himself and the court can oust him.

It is difficult to imagine any notice of contest more vague, indefinite and uncertain than the one under consideration.

The charges are tantamount to an allegation of bribery, or rather they charge in some instances a bribery, or attempt to bribe, by the contestee, or his agents. Some of them charge " *him*, or *his agents*," and some charge his *agents*.

The contest goes upon the theory that contestee secured his election by bribery, and thus disqualified himself to hold the office of Judge. And such charges are so vague and indefinite as to be wholly insufficient to put contestee upon notice of any kind of defense.

Contestant does not claim to have been elected.

The one vital question then is—does bribery, if sufficiently charged and fully proved, disqualify the contestee?

We are now considering the notice and petition on the motion to quash or demurrer, and though the facts relied on are not well pleaded, yet we regard them so for the purpose of deciding the legal question whether bribery at an election disqualifies.

The court is of opinion that bribery at an election does disqualify the guilty party to hold office.

But on the question *when* the bribery disqualifies the court is not unanimous.

The majority of the court is of opinion that before bribery works disqualification, the accused party must have been

indicted by a grand jury and convicted upon the indictment after regular and formal trial.

If this be the law, then notice and specifications simply charging that the contestee committed bribery at the election, without further specifying and alleging that he had been indicted and convicted therefor, are radically and fatally defective.

The constitution provides that all male citizens of the State shall be entitled to vote, except minors or persons of unsound mind, paupers, and persons "*under conviction* of treason, felony, or *bribery* in an election."

The same article provides that no person, except citizens entitled to vote, shall be elected or appointed to any office. This, in the absence of further qualifications prescribed by the legislature, is equivalent to saying, that any citizen entitled to vote shall be eligible to election or appointment to any office, subject to the age requirement as to Judges and some other officers.

Qualification to vote and qualification to hold office are coincident, therefore, with the exception of the age qualification.

What disqualifies the voter disqualifies the office holder, and *vice versa.*

The constitution, in plain terms, provides that there must be a conviction before disqualification arises. The only evidence of the disqualification is the previous conviction.

To the same effect is section 4 of chapter 7, of the Code (1899), enacted in pursurance of the constitution.

The only offense against the election law which *seems* to work disqualification so as to authorize removal from office without a previous conviction, is the offense of offering to, giving, or distributing among voters, on election day, by or on behalf of the candidate, any intoxicating drinks, in which event on "*proof of the fact*" the candidate shall be "removed" from office. (Code, ch. 5, sec. 10).

Even under this section it may well be doubted whether a contest court could exercise this power, and whether such removal should not take place in a direct proceeding to remove the officer upon formal complaint, and "*proof of the fact.*"

At any rate this court certainly has no power to remove from office on a charge of bribery previous to a conviction.

A careful search of the constitution and statutes will disclose no other instance "where a contest court, on mere "*proof*" of the fact, in advance of conviction, is authorized to act.

It may well be and we believe it to be true, that on a proper contest, proof that a candidate has purchased a vote would work the rejection of that vote, though there seems to be no specific statute on the subject. But if a contest goes upon that theory, a list of the votes so contested must be given the contestee.

This contest goes upon no such theory. No list of votes challenged and objected to on the ground of bribery is either given or relied on.

The evident belief of the contestant and his counsel was that if they could show bribery it would disqualify and oust the successful candidate.

We hold this is not the law. There must be a conviction to disqualify. Even in that case we doubt whether this court would have jurisdiction to oust.

We suggest, because it is not necessary to decide, that even after conviction, the removal from office could take place only in some direct proceeding instituted for the purpose and based upon the unreversed conviction of the offending party.

Having reached the conclusion that there is no ground upon which the office of Judge of the Twelfth Judicial Circuit can be contested for, set up and disclosed on the face of the notice and specifications, or any other pleading in the case, we sustain the demurrer, or motion to quash, and quash and dismiss said notice and specifications, and wholly dismiss this proceeding, and the contestee is directed to go thereof without day.

This disposition of the case renders it unnecessary to enter upon a discussion of the case upon its merits.

It is not out of place, however, and we think it entirely proper, in view of the fact that neither party has the right, under the law, to review the action of this court, to

say that besides the questions raised and discussed upon the demurrer, Judge McWhorter, the contestee, by proper and appropriate pleading, put in issue the allegations of bribery, fraud and corruption alleged in the notice of contest against him.

Such denial was prompt, emphatic and unequivocal.

Looking to the merits of the case, as disclosed by the depositions taken, it must be apparent to the candid mind, upon a careful review of the evidence, that it wholly fails to establish the charges of bribery, corruption and fraud—all or any of them.

There is no evidence which, measured by any known rule of law, supports any of the charges and specifications. The candid and unbiased mind may well go further and easily conclude there is no evidence which tends to raise even a respectable suspicion of the truth of such charges.

In this case the evidence fails on the merits to make out any kind of a case for the contestant.

DAILEY, C. W. (*concurring*):

I concur fully in the views expressed and in the conclusions reached by Jacobs, President, on the demurrer or motion to quash, and in the dismassal of the proceedings. I can neither concur in, nor dissent from his observations on the facts, for I have not read the evidence or any part thereof.

C. P. DORR, (*dissenting*):

1. A Special Tribunal constituted under authority of section 15 of chapter 6, of the Code, is a subordinate Legislative tribunal, and not a part of the judicial department of the State.

2. *McWhorter* v. *Dorr*, 50 S. E. R. p. 838. Bribery is an offense at common law, and the common law offense of bribery has never been abrogated by the Constitution or any statute in the State of West Virginia, in so far as the same applies to the conduct of elections.

3. It is a well established principle of law, both in England and the United States, that bribery in an election committed by a person claiming to be elected, or by any agent of his, with or without his knowledge or direction, renders his election void.

4. At common law a person guilty of bribery in an election, need not be indicted, tried and convicted before declaring his election void.

Bribery in an election by the party claiming to be elected renders his election void, regardless of the fact, whether he has been indicted, tried and convicted.

This Court being a subordinate legislative tribunal could only consider the contest upon the notice and petition of contestant, the answer of contestee, with the specifications of each, and the evidence taken and filed by the parties interested. No pleadings could be considered by way of demurrer or motion to quash. Who ever heard of a demurrer or motion to quash in a proceeding before a legislative body? Nothing in my opinion could be legally considered on the hearing except the notice of contest, and the specifications thereof, the answer hereto and the evidence.

Specification 1, of the contestant, charges the contestee with offering to pay Chas. B. Mayo, of Curtin, Nicholas County, W. Va. $1,000.00 if he would vote for contestant, and use his influence to secure his election to the office of Judge of the Twelfth Judicial Circuit.

Specification 2, charges the contestee with offering to pay R. L. Mace, of Hackers Valley, Webster County, $2500 for the same purpose; specification 3, charges the contestee of paying to Marion Mick, $500.00, for his influence in securing his election; the other specifications charge the contestee, either by himself or his agent, of paying to various persons, naming them, or offering to pay said parties, certain specific sums of money, named in the specification; and the specifications close with the allegation that contestee "by the use of said money and means aforesaid for the purpose of corrupting and influencing the voters of said Circuit at said election, you have disqualified yourself to hold said office." The contestee in his reply does not deny the use of money, either by himself or his agent in securing his election, but simply traverses each specification by way of denial.

He admits paying to L. H. Kelly $500. the amount assessed by the campaign committee of Braxton County, against him. If he could pay this campaign committee $500, in Braxton County with which to secure his election, why could he not pay all his campaign committees in his circuit $5,000 each, or any sum necessary to corrupt the voters of the entire circuit? To say that these specifications do not give the contestee

notice of the charges against him seems to me to be a travesty on the English language.

At common law bribery by the candidate or his agents to secure his election, disqualified him from holding office. 6 American and English Encyclopedia of Law, 1st Edition, page 364, and cases there cited; *Donley* v. *Washburne*, Congressional Digest of Election Cases 355; *Page* v. *Pierce*, same book, page 419; *Mitchell* v. *Walsh*, same book, page 521.

Contestee's counsel in their argument admit that at common law bribery disqualifies a candidate from holding the office. Does the common law exist in West Virginia? I think it does. The Constitution of the State, section 21, article 8, is as follows: "Such parts of the common law, and of the laws of this State as are in force when this article goes into operation and are not repugnant thereto, shall be and continue the law of the State until altered or repealed by the legislature."

At common law the candidate being guilty of bribery in another election was not disqualified from holding office.

Section 4 of chapter 7, of the Code, was passed to correct this, and is as follows: "No person convicted of treason, felony or bribery in an election, before any court in or out of this State, shall, while such conviction remains unreversed, be elected or appointed to any office, under the laws of this State; and if any person while holding such office, be so convicted, the office shall be thereby vacated."

Section 10 of chapter 5 is as follows: "If any person who is a candidate for any office under the constitution and laws of this State, shall, by himself or another, offer to give or distribute among the voters any intoxicating drinks, on the day of election, he shall, if elected, forfeit his office and on proof of the fact be removed therefrom, and if any person, whether a candidate or not, offer to give or distribute any intoxicating drinks to any voter on the day of an election, he shall forfeit not less than $10. nor more than $50." These sections must be strictly construed, as they are in derogation of the common law. 23 American and English Encyclopedia of Law (1st Edition), page 387. Cases there cited. 1st Kent's Commentaries, page 464, *Harrison* v. *Leach* 4th W. Va. 383. The legislature knew that, at common law,

a candidate or his agents using bribery to secure his election, disqualified him from holding office, and therefore left the common law just as it was. At common law the use of intoxicating drinks on the day of the election, did not disqualify.

These statutes simply enlarge the common law, making that which was not a disqualification at common law a disqualification, and leaving the common law as it stood, as to bribery by the candidate to secure his election. There is no such thing as repealing the common law by implication, as the constitution forbids it to be done in any other way than by an act of the legislature.

It is the policy of this state, that all elections should be fair. The use of money by either candidate for an office prevents a fair election. The use of money by a candidate against his opponent is a fraud upon him. Fraud vitiates all things, wills, deeds, judgments, decrees and elections. No one should be permitted to hold office in this State who has obtained the same by fraud. So far as bribery is concerned, as shown above, a candidate who uses bribery in his election is disqualified from holding office.

My conclusions are that the specifications are sufficient, and that they are supported by the law applicable to this case.

In the opinion of the majority of the Court, Judge Jacobs undertakes to say what the evidence filed in the case proves. This is clearly voluntary on his part, and is wholly out of place, as the contest was decided upon the demurrer and motion to quash, offered by the contestee. The testimony was not read upon the hearing of the contest.

In view of the specifications of contestant and the answer and admissions of contestee, and the fact that the contestee did not go upon the witness stand to deny any of the charges or the facts alleged against him, and the fact that the contestant did go on the stand, I am unable to see how Judge Jacobs can draw his conclusions announced by him upon the merits of the case, which I decline to discuss in this opinion.