THE STATE OF FLORIDA, EX REL., VAN C. SWEARINGEN, ATTORNEY GENERAL, ET AL., *Relators*, v. THE RAILROAD COMMISSIONERS OF THE STATE OF FLORIDA, *Respondents*.

Opinion Filed April 19, 1920.

1. A prohibition will only be granted by the Supreme Court to control the action, of tribunals or persons exercising judicial power who attempt to usurp a jurisdiction belonging to some other forum.

2. The statutes regulating the procedure in issuing writs of prohibition contemplate the use of the writ only to restrain the unlawful exercise of judicial or quasi-judicial power.

3. The common law writ of prohibition is not a writ of right; but it is an extraordinary judicial writ, that in proper cases may be issued to restrain the unlawful exercise of judicial functions when no other adequate remedy is afforded by law.

4. While a writ of prohibition may issue *in a proper* case to restrain an unauthorized or illegal judicial or quasi-judicial act, such a wrt may not be issued to restrain a legislative or quasi-legislative or a purely administrative or ministerial act not in its nature judicial or *quasi*-judicial.

5. In fixing rates to be charged by railroad common carriers for transporting persons and property the Railroad Commissioners exercise a *quasi*-legislative function some times regarded as being administrative, but not judicial in its nature.

6. Where it is doubtful whether a statute authorizes a municipality to fix rates for a public utility company, such doubt must be resolved against the authority of the city.

7. Even if authority is by statute given to a municipality to. fix rates for a public service corporation operating therein, such authority is subject to legislative control.

8. Any contract ordinance passed by the city with statutory authority fixing by agreement street car fares, as an incident to the granting of franchises to a street railroad company, is subject to legislative control.

9. The Charter Act of the City of Pensacola, Chapter 6746 Acts of 1913, does not clearly and plainly give to such city the power to prescribe rates for street car fares to the exclusion of State authority, if at all.

10. Chapter 6527, Laws of Florida, approved June 7, 1913, gives to the Railroad Commissioners authority "to make reasonable and just rates of freight and passenger tariffs to be observed by all railroads, railroad companies and common carriers doing business in this State," which includes street railroads.

11. Authority to prescribe reasonable and just rates of street car fares for the Penusacola Electric Company is by law vested in the Railroad Commissioners.

A case of original jurisdiction.

Writ denied.

*John B. Jones,* for Petitioners.

WHITFIELD, J.—A petition for a writ of prohibition signed by the Attorney General of the State and by the City Commissioners of the City of Pensacola in substance alleges that the officials of the City of Pensacola have statutory authority to regulate the fares to be charged by a street car company operating in that city, and that upon the petition of the receiver of such street car company the Railroad Commissioners of the State of Florida have assumed jurisdiction to fix rates for street car fares in that city, when such Railroad Commissioners are without jurisdiction in the premises. A writ of prohibition against the Railroad Commissioners is prayed.

The constitution provides that the Supreme Court "shall have the power to issue writs of * prohibition." Sec. 5, Art. V.

A prohiibtion will only be granted by the Supreme Court to control the action of tribunals or persons exercising judicial power who attempt to usurp a jurisdiction belonging to some other forum.

The jurisdiction of the Supreme Court to entertain proceedings in prohibition, as conferred by the constitution of this State, is confined to the legitimate office of that writ, as defined by the common law, and a statute enlarging and changing the purposes of the writ, so as to confer a new and original jurisdiction of matters not contemplated by the constitution, will not be recognized by this court as affecting its jurisdiction. Sherlock v. City of Jacksonville, 17 Fla. 93; 23 Am. & Eng. Ency. Law (2nd ed.) p. 204.

The statutes regulating the procedure in issuing writs of prohibition contemplate the use of the writ only to restrain the unlawful exercise of judicial or quasi-judicial power. Sec. 2262 *et seq.* General Statutes, 1906, Compiled Laws, 1914.

At common law it is well settled that a writ of prohibition must be directed to some judicial tribunal or officer. In other words it lies only to prevent or control judicial (or quasi-judicial) action, as distinguished from legislative, executive, or ministerial action. Accordingly, it is generally held that prohibition will not lie to prevent the performance of ministerial duties by executive or administrative officers, or to restrain the performance by the courts of duties which are merely administrative and ministerial. 22 R. C. L. p. 13.

The action which may be restrained by the writ of prohibition must be judicial or *quasi*-judicial in its nature. The writ will not lie to prevent officers or tribunals from acting where such action is not judicial in its nature.

The writ lies against any person or persons assuming to exercise judicial or *quasi*-judicial power, although not strictly or technically a court.

The writ will not lie against ministerial, executive, or legislative officers who do not assume to exercise any judicial powers. 22 Am. & Eng. Ency. Law (2nd ed.) pp. 203, 206.

Where the power to issue writs of prohibition rests upon constitutional provisions and is given in general terms, the Legislature cannot enlarge the scope or office of the writ so as to include ministerial functions.    23 Am. & Eng. Ency. Law (2nd ed.) p. 204; State, ex rel., Scharnikow v. Hogan, 24 Mont. 379, 62 Pac. Rep. 493; 51 L. R. A. 958; Dobson v. Westheimer, 5 Wyo. 34, 36 Pac. Rep. 626; Hobart v. Tillson, 66 Cal. 210, 5 Pac. Rep. 83; Winsor v. Bridges, 24 Wash. 540, 64 Pac. Rep. 780; Camron v. Kenfield, 57 Cal. 550.

The common law writ of prohibition is not a writ of right; but it is an extraordinary judicial writ, that in proper cases may be issued to restrain the unlawful exercise of judicial functions when no other adequate remedy is afforded by law. 22 R. C. L. p. 4 *et seq;* Alexander v. Crollot, 199 U. S. 580.

While a writ off prohibition may issue in a proper case to restrain an unauthorized or illegal judicial or *quasi*-judicial act, such a writ may not be issued to restrain a legislative or *quasi*-legislative or a purely administrative or ministerial act not in its nature judicial or *quasi*-judicial. Whether such a writ is appropriate is determined by the nature of the act sought to be restrained and not by the character or name of the office or position held by the person or persons sought to be restrained by the writ. A judicial officer may not be restrained by the writ of Prohibition from the exercise of a non-judicial function; but any officer or board may

by the writ of prohibition be prohibited from exercising judicial or *quasi*-judicial functions not within his or their lawful jurisdiction or power. 22 R. C. L. p. 14 et seq; McWhorter v. Dorr, 57 W. Va. 608, 50 S. E. Rep. 838, 110 Am. St. Rep. 815; 111 Am. St. Rep. 929 Notes; Williamson v. Mingo County Court, 56 W. Va. 38, 48 S. E. Rep. 835, 3 Ann. Cas. 355; Commissioners' Court of Washington County v. State *ex rel.* Bowling, 151 Ala. 561, 44 South. Rep. 465; Dobson v. Westheimer, 5 Wyo. 34, 36 Pac. Rep. 626; State, ex rel., West v. Clark County, 41 Mo. 44; Speed v. Common Council, 98 Mich. 360, 57 N. W. Rep. 406; State *ex rel.* McAnally v. Goodier, 195 Mo. 551, 93 S. W. Rep. 928; State *ex rel.* McEntee v. Bright, 224 Mo. 514, 123 S. W. Rep. 1057, 20 Ann. Cas. 955; Mechem on Public Officers, Sec. 1019; High on Ex. Leg. Remedies, (3rd ed.) 782; 23 Am. & Eng. Ency. Law (2nd ed.) p. 204; 40 South. Rep. 122; 51 L. R. A. 958; Smith v. Whitney, 116 U. S. 167.

The writ of prohibition will lie only to restrain the unlawful exercise of judicial functions by an inferior tribunal, acts of an administrative or ministerial or of a legislative character not falling within its province. 32 Cyc. 600.

Under Section 35 of Article V of the Constitution as amended in 1910 the Legislature "may clothe any Railroad Commission with judicial powers in all matters connected with the functions of their office." And by Section 2922 General Statutes, it is enacted: "The said Railroad Commissioners are hereby vested with judicial powers to do or enforce or perform any function, duty or power conferred upon them by this chapter to the exercise of which judicial power is necessary." But the exercise of judicial power by the Railroad Commissioners

is not necessary in the performance of their statutory duty to prescribe tariff rates for railroad common carriers. See Spring Valley aWter Works v. Bartlett, 63 Cal. 245.

"Rate regulation is purely a legislative function, even where exercised by a subordinate body upon which it is conferred." Home Telephone & Telegraph Co. v. City of Los Angeles, 211 U. S. 265, text 278, 29 Sup. Ct. Rep 50.

"The fixing of rates, which may be charged by public service corporations—in this case a street car corporation—is a legislative function of the State." Milwaukee Electric Ry. & Light Co. v. Railroad Commission of Wisconsin, 238 Wis. 174, 35 Sup. Ct. Rep. 820.

In fixing rates to be charged by railroad common carriers for transporting persons and property the Railroad Commissioners exercise a *quasi*-legislative function some times regarded as being administrative, but not judicial in its nature. Railroad Com'rs v. Pensacola & A. R. Co., 24 Fla. 417, 5 South. Rep. 129; Storrs v. Pensacola & A. R. Co., 29 Fla. 617, 11 South. Rep. 226; Pensacola & A. R. Co. v. State, 25 Fla. 310, 5 South. Rep. 833; State v. Atlantic Coast Line R. Co., 56 Fla. 617, 47 South. Rep. 969; 12 C. J. 852; Interstate Commerce Commission v. Cincinnati, N. O. & T. P. Ry. Co., 167 U. S. 479, text 499, 17 Sup. Ct. Rep. 696; Chicago, M. & St. P. R. Co. v. State Public Utilities Commission, 2682 Ill. 49, 108 N. E. Rep. 729; 168 Pac. 565.

In Toomer v. London, Chatham, and Dover Ry. Co., 2 Law Rep. Exch. Div. 450, the board had jurisdiction possessed by the Court of Common Pleas and the writ

of prohibition was issued to stop the enforcement of an order.

In Quinby v. Public Service Com., 223 N. Y. 244, 119 N. E., Rep. 433, P. U. R. 1918 D 30; Atchison, Topeka & Santa Fe Ry. Co. v. Corporation Commission of State of Oklahoma, —— Okla. ——, 170 Pac. Rep. 1156, P. U. R. 1918 C 598, and other like cases the writ of prohibition was apparently used in classes of cases that are not permitted under our constitution as held in Sherlock v. City of Jacksonville, *supra.*

Section 8 Article VIII of the State Constitution is as follows: "The Legislature shall have power to establish and to abolish municipalities; to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors."

The present commission form of government Charter Act of the City of Pensacola, Chapter 6746 Laws of Florida, approved May 3, 1913, to take effect immediately, provides in Section 26 thereof that "the Board of Commissioners shall have power by ordinance;

"1st.   To construct, own, equip and operate wharves, docks, railroads, and terminals as may be deemed advisable for the promotion of the trade and commerce of said city.

"2nd.   To improve and regulate the use of the harbor within the limits of the city.

"3rd.   To acquire, own, construct, lease or operate public utilities, to grant to persons or corporations the right to construct, purchase, lease or operate public utilities, and to regulate the construction, equipment, operation

and service of all public utilities operating under franchises heretofore or hereafter granted, and the rates to be charged for such service, subject to the limitation herein provided, and establish whatever requirements may be proper to secure efficient service, or as may tend to secure in the most ample manner the safety, health, comfort, welfare and accommodation of the public, and to correct abuses and to prevent unjust discriminations and charges by any public utility. The term 'public utility' as used in this Act shall mean and embrace all persons and corporations who may own, operate, manage or control any plant, or equipment, or any part thereof, within the limits of said city for the production, transmission, delivery or furnishing heat, light, power or water, directly or indirectly, to or for the inhabitants of said city, or engaged in, or performing any other service of a public nature in said city, and no term or conditions contained in any grant heretofore or hereafter made shall be construed as limiting or impairing this power and authority. No grant of any franchise by the Board of Commissioners shall go into effect until thirty days after it has been passed. If within that time a petition signed by at least twenty per cent. of the qualified voters of the city shall be filed with the Mayor requesting that the ordinance so passed be submitted to a vote of the people, it shall be the duty of the Mayor to call such election to be held as soon as may be under the election laws of the State and ordinances of the city and to submit said ordinance for the approval of the voters of said city, and if a majority voting upon such proposition shall vote against the ordinance it shall fail to be of any effect, but if a majority shall vote in favor thereof it shall be of full force and effect from and after the date of election, and

every such ordinance shall contain a provision for payment of the expenses of such election.

"4th.   To compel from time to time the reasonable extension of its facilities for service by any public utility, but no such extension shall be required on or over or under any street   or highway which shall   have been graded.

"5th.   To grant to any railroad company the right to run its cars over the track of any other railroad company operating under a franchise from the city, under such rules and regulations as may be prescribed by ordinance and upon payment of just compensation for the use thereof.

"6th.   To provide for the use, upon the payment of just compensation, of any such tracks as the city shall require for use in connection with any railroad which it may at any time own and operate; and the commissioners may in like manner compel persons or corporations maintaining poles in the streets, or public ways, for the support of telephone, telegraph, or electric wires, to allow the city, or persons or corporations, to use such poles for the same or similar purposes, upon the payment of just compensation for such use."

Municipalities may exercise only such powers as are clearly conferred upon them by the express or implied provisions of law; and all doubts as to the existence of a power in a municipality is resolved against the city. This rule was applicable to statues conferring authority upon the Railroad Commissioners until the enactment of Chapter 6527, Acts of 1913, which provides that "the laws relative to the Railroad Commissioners shall be deemed

remedial laws to be construed liberally" and that "all doubts as to their jurisdiction and powers shall be resolved in their favor."

Independently of a right to regulate and control the rates to be charged for public service reserved in a grant of a franchise or right to use the city streets, a city or other municipality has no power to regulate the rates to be charged by public service corporations in the absence of express or plain legislative authority to do so. Nor does such authority arise from the power to regulate the opening and use of streets, nor from a grant of the general right to control and regulate the right to erect works in the streets of the city.

Where it is doubtful whether a statute authorizes a municipality to fix rates for a public utility company, such doubt must be resolved against the authority of the city.

Even if authority is by statute given to a municipality to fix rates for a public service corporation operating therein, such authority is subject to legislative control.

Any contract ordinance passed by the city with statutory authority fixing by agreement street car fares, as an incident to the granting of franchises to a street railroad company, is subject to legislative control. State ex rel. Triay v. Railroad Commissioners, decided present term.

It is manifest that the above quoted statutory authority conferred upon the City of Pensacola does not clearly and plainly give to such city the power to prescribe rates for street car fares to the exclusion of State authority if at all. And all doubts are to be resolved against the city.

The constitution provides: "The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discriminations and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures." Sec. 30, Art. XVI.

Chapter 6527 Laws of Florida, approved June 7, 1913, gives to the Railroad Commissioners authority "to make reasonable and just rates of freight and passenger tariffs to be observed by all railroads, railroad companies and common carriers doing business in this State," which includes street railroads.

Chapter 6527, Acts of 1913, "relating to the railroad commissioners and the regulation of common carriers," provides "that the laws relative to the railroad commissioners shall be deemed remedial laws to be construed liberally to further the legislative intent to regulate and control public carriers in the public interest," and that "all doubts as to their jurisdiction and powers shall be resolved in their favor;" and these requirements should be observed in construing and applying the statute.

The word "jurisdiction" relates to the subjects or objects over which authority may be exercised, as well as to the nature and extent of the authority to be exercised over the subjects or objects.

Chapter 6527, Acts of 1913, when "construed liberally" and when "all doubts as to the jurisdiction and powers of the railroad commissioners are resolved in their favor," as the statute expressly requires shall be done, confers

upon the railroad commissioners the authority and duty to "make reasonable and just rates of passenger tariffs to be observed by all railroads, railroad companies and common carriers doing business in this State over their respective lines," including electric street railroads engaged in transportation of passengers from point to point within municipalities and outside thereof in this State; and this authority and duty are not affected by an ordinance which by agreement with the carrier limits the fare to five cents from points to points within the city. State *ex rel.* Triay v. Railroad Commissioners, decided present term.

Authority to prescribe reasonable and just rates of street car fares for the Pensacola Electric Compay is by law vested in the Railroad Commissioners.

A consideration of controlling provisions and principles of law develop the following conclusions: That the common law writ of Prohibition that may be issued by the Supreme Court under the express provision of the constitution can be used only to prohibit the unauthorized exercise of judicial or *quasi*-judicial power; that in prescribing just and reasonable rates for the transportation of persons and property by common carriers the Railroad Commissioners exercise under the statues a *quasi*-legislative power and not a *quasi*-judicial power; that the charter act of the City of Pensacola, Chapter 6746, approved May 3, 1913, does not clearly confer upon the municipality authority to prescribe rates of fares on street railroads operating in the city, and doubts as to the existence of such power in the city must be resolved against the city; that Chapter 6527, Acts of 1913, approved June 7, 1913, confers upon the Railroad Com-

missioners authority to prescribe just and reasonable rates to be charged by all railroads, railroad companies and common carriers for intrastate transportation, including street railroads, and that doubts, if any, as to the jurisdiction and power of the Railroad Commissioners in the premises must under the statute be resolved in favor of the exercise of such power and jurisdiction by the Railroad Commissioners; and consequently that the Railroad Commissioners, and not the officers of the municipality have the authority to prescribe rates for the transportation of passengers by the Pensacola Electric Company; that such authority is *quasi*-legislative and not *quasi*-judicial in its nature, and that the common law writ of prohibition cannot properly be issued to prohibit the Railroad Commissioners from exercising their *quasi*-legislative authority to prescribe just and reasonable rates of transportation to be charged by the Pensacola Electric Company in the City of Pensacola, therefore the writ is denied.

BROWNE, C. J., AND TAYLOR AND WEST, J. J., concur.